UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

SCOTT RYAN D.,

        Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 1:22-cv-01845-AR

OPINION AND ORDER

**ARMISTEAD, Magistrate Judge**

In this judicial review of the Commissioner's final decision denying Social Security benefits, Scott Ryan D. (last name omitted for privacy) challenges the Administrative Law Judge's evaluation of the medical opinions from Karla Reinhart, DNP, FNP-C, his subjective symptom testimony, and of lay witness testimony. Pl. Br. at 5, ECF No. 14. As explained below, the Commissioner's decision is AFFIRMED.[1]

---

[1]     This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have

Page 1 – OPINION AND ORDER

**ALJ'S DECISION**

In denying plaintiff's application for Title XVI Supplemental Security Income (SSI), the ALJ followed the five-step sequential evaluation process.[2] The ALJ determined that plaintiff had a severe psychological impairment (dysthymia) and severe physical impairments (chronic kidney disease stage 3; asthma/chronic obstructive pulmonary disease (COPD); and keratoconus). (Tr. 18.) Plaintiff reported an inability to work because of chronic fatigue that "causes [him] to sleep more than the average person," his impaired kidney function, and difficulty breathing caused by COPD. (Tr. 478-84, 817, 809.)

As to the RFC, the ALJ considered the evidence in the case record and found that plaintiff's medically determinable impairments explained some of his symptoms but that the medical evidence and his reports of daily living were not entirely consistent with his statements concerning the intensity, persistence, and limiting effects of his alleged symptoms. (Tr. 22.) Notably, the ALJ considered the extent to which plaintiff could care for his elderly in-laws, perform household chores, drive, grocery shop, spend time with his partner, and play video games. (Tr. 21.)The ALJ also explained that plaintiff's symptoms were stable, did not interfere with his daily activities, and were properly managed with treatment. (Tr. 21-23.) Given those findings, the ALJ found that plaintiff was capable of performing less than a full range of sedentary work with the following additional limitations:

---

consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2]      To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id*.; *see also Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

occasional climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, and crawling; avoid concentrated exposure to extreme cold; no exposure to fumes, odors, dusts, gases, poor ventilation, etc.; no exposure to hazards such as unprotected heights; limitation to simple, routine, repetitive tasks consistent with a reasoning level of 2 and unskilled work as defined by the DOT; and limitation to no more than occasional contact with the general public.

(Tr. 20.) With that RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, such as laminator, final assembler, and addresser.[3] (Tr. 26.)

## DISCUSSION

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). Plaintiff advances three arguments challenging the ALJ's decision, and the court, mindful of the standard of review, addresses each in turn.

**A.    *Karla Reinhart's Medical Opinion***

---

[3]    As noted in *White v. Kijakazi*, 44 F.4th 828, 835 (9th Cir. 2022), the SSA has been working on a transition to a new Occupational Information System since 2008. The transition has not yet occurred, and the Ninth Circuit has encouraged the SSA, along with its sister circuits, "to make the transition to a system that more accurately reflects available jobs in the current economy." *Id*.

The ALJ noted Reinhart's opinion in which she stated that plaintiff would need to lie down or rest periodically because of fatigue, kidney disease, and COPD. (Tr. 23, 1056-59.) The ALJ also acknowledged Reinhart's statements that plaintiff would need two to four unscheduled breaks daily for 10 to 15 minutes due to fatigue and dyspnea, and would be absent three to four days per month. (Tr. 23, 1058-59). The ALJ, however, found that opinion unpersuasive because Reinhart's treatment notes do not reflect significant abnormalities to support the assessed degree of restriction. The ALJ points out that at plaintiff's first of two visits with Reinhart, he reported fatigue, insomnia, and dyspnea. Yet Reinhart noted plaintiff's "lungs were clear to auscultation bilaterally and his strength was full throughout the major muscle groups." (Tr. 24.) The ALJ relies on this to conclude that the "records fail to show why he would need unscheduled breaks, excessive absences, and be unable to sit for longer periods." (Tr. 24, *see* Tr. 1049-54, 1142-53.) The ALJ also notes that rather than provide what symptoms the claimant experienced, Reinhart cited the diagnostic codes in her first opinion and did not respond to the question asking how long plaintiff would need to rest during the day. (Tr. 23, *see* Tr. 1055-59.) The ALJ explained that, even after reviewing Reinhart's second opinion completed in 2021, plaintiff's conditions had not changed and that they remained stable. (Tr. 24, citing Tr. 1154-55.) Taken together, the ALJ found Reinhart's opinions unpersuasive and concluded that there were "very little objective findings or signs in the record to support her opinion." (Tr. 24.)

Plaintiff asserts that by finding unpersuasive Reinhart's two medical opinions, the ALJ erroneously evaluated his stage 3 Chronic Kidney Disease (CKD) and its most limiting symptom – chronic fatigue. Plaintiff questions whether the ALJ considered each of Reinhart's opinions individually, when he should have "considered the medical opinions . . . together in a single analysis." (Pl.'s Br. at 7, ECF No. 14, citing 20 C.F.R. § 416.920c(b)(1).) In plaintiff's view, the

Page 4  – OPINION AND ORDER

ALJ erred by declining to consider his chronic fatigue as a symptom of his CKD, and instead rejected his "complaints of . . . chronic fatigue," because "the medical record does not reflect associated diagnoses or testing to establish diagnoses" at step two. (Tr. 18.) Plaintiff asserts that had the ALJ considered Reinhart's opinions together, the ALJ would have recognized that his chronic fatigue supports Reinhart's assessed limitations. (Pl. Br. at 8-9.)

The Commissioner responds that the ALJ appropriately applied the new regulations when considering Reinhart's opinion. Under the new regulations, the most important factors an ALJ must evaluate are (1) supportability and (2) consistency. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The Commissioner argues that the ALJ appropriately considered the supportability and consistency factors to find Reinhart's opinions not persuasive, that the ALJ's rationale is supported by substantial evidence, and that there is no error. The Commissioner is correct.

Although the ALJ discussed Reinhart's September 2020 opinion and November 2021 opinion in separate paragraphs, it does not follow that the ALJ failed to analyze them collectively or that the ALJ disregarded plaintiff's chronic fatigue symptoms. When discussing Reinhart's September 2020 opinion, the ALJ found that the limitations assessed by Reinhart are not supported by her own treatment notes. (Tr. 23-24.) The ALJ noted that Reinhart had only treated plaintiff twice before providing the September 2020 opinion, and that her treatment notes "do not reflect significant abnormalities to support the assessed degree of restriction." The ALJ detailed that despite plaintiff's complaints of fatigue, insomnia, and dyspnea, his lungs were clear to auscultation bilaterally, and that he had full strength. (Tr. 24.)

The ALJ's findings are supported by substantial evidence and are a reasonable interpretation of the record. Contrary to plaintiff's suggestion, Reinhart's treatment notes do not

Page 5 – OPINION AND ORDER

specifically attribute plaintiff's fatigue to CKD, and instead are largely unremarkable. The May 2020 treatment notes cited by the ALJ reflect generalized complaints of fatigue, malaise, lethargy, and insomnia, yet his physical examination findings are benign, with 5/5 strength in all muscle groups and intact reflexes. (Tr. 1050.) And Reinhart's August 2020 treatment notes reflect that plaintiff denied fatigue yet complained of dyspnea, with full strength, normal range of motion, and no significant examination findings. (Tr. 1051-52.) Based on these routine findings, the ALJ reasonably could conclude that the severity of the restrictions assessed by Reinhart were not supported by her own examination findings.

The ALJ also discussed Reinhart's November 2021 opinion. As the ALJ reported, in Reinhart's November 2021 opinion, she stated that she performed plaintiff's annual exam that month; that he receives treatment for low vitamin D, high triglycerides, COPD, and depression; and that his conditions were unchanged, and he remained stable. The ALJ stated that Reinhart's November 2021 assessment of plaintiff's limitations remained the same. The ALJ also observed that Reinhart's treatment notes contain "very little objective findings or signs" to support her limitations. (Tr. 24.) Based on plaintiff's unchanged, stable conditions and benign examination findings, the ALJ concluded that Reinhart's opinion is not persuasive. Reinhart's treatment notes reflect conflicting reports of fatigue, and based on her generally unremarkable physical findings, the ALJ reasonably could conclude that they do not support the severe restrictions listed in her opinions. The ALJ's findings concerning the November 2021 opinion are supported by substantial evidence and are a reasonable interpretation of the record. (Tr. 1052, *see also* Tr. 1049-54, 1142-53.)

As for consistency, the ALJ had only one other medical opinion to consider alongside Reinhart's, that of Kumar Dinesh, M.D., a renal care specialist. The ALJ stated that Dr. Dinesh

acknowledged plaintiff's fatigue, but could not assess whether that was due to his kidney disease or medications. (Tr. 24, *citing* Tr. 1097.) The ALJ also noted that Dr. Dinesh observed that plaintiff's CKD has been stable from 2014 to 2021, citing his creatinine levels, which the ALJ found consistent with his other treatment records, and that Dr. Dinesh did not assess plaintiff's functional limitations. (Tr. 24.) Though plaintiff would have the court reweigh evidence, the ALJ is ultimately "responsible for . . . resolving conflicts in medical testimony," not the reviewing court. *E.g.*, *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). Because substantial evidence supports the Commissioner's rational interpretation, it must be upheld. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

      Plaintiff's other arguments about the ALJ finding Reinhart's opinion unpersuasive are also unavailing. He asserts that the ALJ did not explain how Reinhart's findings that plaintiff's "lungs were clear to auscultation bilaterally and his strength was full throughout the major muscle groups" were relevant to plaintiff's fatigue. Plaintiff argues that by using that objective finding, the ALJ erroneously concluded that his "records fail to show why he would need unscheduled breaks, excessive absences, and be unable to sit for longer periods." (Pl.'s Br. at 9.) It was not unreasonable for the ALJ to conclude that Reinhart's medical opinions were unsupported considering the nature of her responses to the questionnaire. Reinhart's responses were brief, conclusory, and were inadequately supported by objective clinical findings. As the ALJ pointed out, she did not provide a full response to question seven (concerning how long [plaintiff] would need to lie down or rest during the day), some inquiries were "not assessed," and some responses only referred to the "dx codes." (Tr. 23, *see* Tr. 1055-59.) "Although we [the reviewing court] will not fault the agency merely for explaining its decision with less than ideal

Page 7 – OPINION AND ORDER

clarity, we still demand that the agency set forth the reasoning for its decision in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (internal citation and quotation marks omitted). The court can conduct a meaningful review of the ALJ's opinion, as his logic is clear based on the lack of objective findings and responses from Reinhart herself. As noted above, the ALJ reasonably concluded that plaintiff's symptoms were not totally disabling because the only available objective findings logically discredit his chief complaints of trouble breathing and chronic fatigue. Therefore, the ALJ reasonably concluded that Reinhart's opinions that plaintiff would need unscheduled breaks, be absent from work three to four time per month, and be unable to sit for long periods of time as unsupported. (Tr. 24, 1052.) The ALJ did not err in evaluating Reinhart's opinions.

**B.** *Subjective Symptom Testimony*

Plaintiff argues that the ALJ improperly rejected his subjective symptom testimony. In his view, the ALJ failed to articulate specific, clear and convincing findings in discounting his symptom testimony. Plaintiff maintains, contrary to the findings of the ALJ, that the RFC does not allow for the frequent breaks, daily naps, constant reminders to stay on task, and frequent absences to which he testified. Plaintiff also objects to the ALJ's conclusion that his allegations of the level of symptoms and limitations he experiences are inconsistent with his medical record. Plaintiff lastly asserts his activities of daily living do not exceed his alleged limitations, as the ALJ found. As the court explains, the ALJ's findings were sufficiently specific, clear and convincing.

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant

Page 8 – OPINION AND ORDER

must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, absent affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for discounting the claimant's testimony about the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are specific enough to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter*, 806 F.3d at 493. Factors the ALJ may consider when making those credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039.

      At both of his hearings and in function reports, plaintiff alleged that he cannot work because of constant fatigue, kidney disease, and COPD from chronic asthma. (Tr. 48-50, 79-81, 478-484, 817, 809.) He reported he would be unable to work because he would miss too many days, that he has been using inhalers all of his life, tires quickly with exertion, and suspects his symptoms will not improve. (Tr. 48-49.) At his 2021 hearing, plaintiff testified that he is out of breath all the time, but can prepare simple meals, do laundry, wash dishes and grocery shop. (Tr. 51-53.) Plaintiff also testified that he went to the hospital in September 2021 because of fatigue, tingling on the right side of his body, and lethargy due to his CKD and COPD. (Tr. 54.)

      The ALJ made no finding of malingering and determined that plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (Tr. 22.) Even so, the ALJ discounted the alleged severity, intensity, and persistence of

Page 9 – OPINION AND ORDER

plaintiff's symptom testimony as (1) inconsistent with his reported activities of daily living and (2) inconsistent with evidence showing improvement and stability with treatment. (Tr. 22-24.) Plaintiff contends that neither reason is supported by substantial evidence. The court disagrees.

Turning to the first rationale, the ALJ appropriately found plaintiff's symptom testimony inconsistent with his reported activities. (Tr. 22-23); *Garrison*, 759 F.3d at 1016 (stating that a claimant's activities have "bearing on [his] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations"). Plaintiff reported that during a typical day, he will do laundry, pick up around the house, take out the garbage, go grocery shopping, spend time with his girlfriend and her parents, watch TV, drive, prepare meals, take naps, and play video games. (Tr. 479-84.) Most notably, plaintiff testified that he served as a caregiver for his girlfriend's parents in 2018 – who had substantial health and mobility issues and needed "24 hour care . . . making it hard for [him] as [a caregiver] to focus on self care." (Tr. 22, 83-84, 682, 973, 1031.) In this role, plaintiff lived with both in-laws, drove them to their doctor's appointments, picked up around the house when needed, and completed their shopping. (Tr. 76-78.)

The ALJ found plaintiff's reports that he cannot work due to his constant fatigue and difficulty breathing inconsistent with these activities. The ALJ pointed to reports from plaintiff that he sleeps more than average, but that eight to nine hours of sleep was sufficient. (Tr. 22, citing 479, 946-47, 937.) The ALJ noted that plaintiff's need for extra sleep would not preclude average daytime work activity. (Tr. 22.) The ALJ also stated, "I find [his] allegations of debilitating symptoms and inability to perform any work activity is inconsistent with his multiple references that he provides full-time care for his elderly in-laws." (Tr. 22.) Plaintiff argues that the record does not establish that his role in helping his in-laws exceed his alleged limitations.

Page 10 – OPINION AND ORDER

Plaintiff argues that he never provided "full-time" care for his in-laws and that his partner did most of the caregiving. (Pl.'s Br. at 14, citing Tr. 76-77, 83.) But as correctly cited by the ALJ, the record reveals that plaintiff was a full-time caregiver several times. (Tr. 22, citing Tr. 1031, 479, 943, 946, 973.) These findings are fully supported by substantial evidence in the record. Thus, the ALJ reasonably concluded that plaintiff's claim of a complete inability to perform any work activity was inconsistent with his caregiving role. Based on the nature and duration of care plaintiff provided for his in-laws during the relevant period, the ALJ reasonably could find that his daily activities are inconsistent with his allegations of total disability and rationally discount his allegations on that basis.

Turning to the ALJ's second rationale, the court disagrees with plaintiff that the ALJ summarized objective medical findings related to his COPD/asthma and CKD to discredit his testimony. He argues that the ALJ identified "no evidence to show that the 'mildness' of his airway obstruction could not cause his alleged shortness of breath." (Pl.'s Br. at 14.) Plaintiff also asserts that simply because his CKD condition is "stable" does not mean that it has improved.

The ALJ discounted plaintiff's subjective symptom testimony finding that his physical symptoms conflict with medical evidence showing improvement and stability with treatment. The treatment improvements that the ALJ relies on "constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *Garrison*, 759 F.3d at 1018. For instance, the ALJ noted that despite plaintiff's reports of significant fatigue and difficulty breathing, throughout his medical record he regularly reported good response to treatment, his providers regularly commented on his stable conditions and mild findings on his pulmonary function testing. (Tr. 22, citing 1035, 1037, 670-75.) And the ALJ points to plaintiff's

Page 11 – OPINION AND ORDER

allegation that he might need to be put on oxygen but failed to find evidence of such need in the record. Contrary to plaintiff's assertions, the ALJ discussed evidence from his pulmonary specialist, Diya Mohammad, M.D., who considered plaintiff's asthma as mild, persistent, and well-controlled, requiring no change in treatment. (Tr. 22, citing Tr. 1030.) The ALJ also noted improvement in his asthma as of the amended alleged onset date and positive respiratory examination findings, with 97 % oxygen saturation. (Tr. 22, citing Tr. 664, 670-75, 1049-54, 1142-53.) Lastly, the ALJ points out that plaintiff has not been referred to pulmonology, his inhalation medications have not been changed, he denies difficulty speaking due to his COPD/asthma, and has reported that his inhaler improves his breathing. (Tr. 22, citing Tr. 1143.)

As to plaintiff's CKD, the ALJ found his incurable condition to be stable. (Tr. 22.) Despite his reported pain from this disease, the ALJ discussed treatment notes where he told his providers he was experiencing "mild" pain, but that such pain would not "result in functional limitations greater than what would be addressed by a sedentary residual functional capacity." (Tr. 22, citing Tr. 497-499, 969-1023, 1060-68.) The ALJ also detailed how his CKD is regularly monitored, and that his kidney functioning has been consistent over time, "without episodes of renal failure or other complications such as hyperkalemia, treatment for decreased urine output, fluid retention causing lower extremity swelling, significant weight loss, nausea, fever, or associated conditions such as poorly controlled hypertension." (Tr. 23, citing Tr. 682-780, 968-1023, 1060-68, 1079-95.) The ALJ also addressed plaintiff's 2021 emergency room visit. The ALJ discussed that the record showed plaintiff presented with multiple "vague complaints, including feeling weak and fatigued." (Tr. 23, citing Tr. 1118-23.) Looking to the record, the physician who treated plaintiff during the emergency room visit stated "[h]is symptoms are somewhat vague and seem to support a likely viral process. . . Unclear etiology of the patient's

symptoms however I see no evidence of acute medical or surgical emergency requiring hospitalization." (Tr. 1123.) Thus, the ALJ was justified in relying on plaintiff's sustained symptom improvements and generally benign medical examination findings as a basis to discount the severity of his alleged physical symptoms. The record shows that the ALJ's assessment is reasonable and that each reason is supported by substantial evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). Taken together, the ALJ's reasons provide a specific, clear and convincing basis to discredit plaintiff's subjective symptom testimony and the ALJ did not err.

C.   *Lay Witness Testimony*

Plaintiff's mother submitted a third-party function report and a letter on his behalf. (Tr. 486-93, 535-538.) In her letter, plaintiff's mother alleged that plaintiff has trouble keeping a job because he would call in sick too often, he is extremely tired all the time, sleeps a lot, and that any task takes him much longer than it would for a "normal person." (Tr. 536-538.) In her report, she states that she visits him every two to three months, has chronic pain in his lower back due to his kidneys and Kyposis, runs out of breath easily, and is extremely tired all the time. (Tr. 486.) She says he "[c]annot go without his medications and inhalers," and that he has "always been disabled." (Tr. 487-88.)

Plaintiff argues that the ALJ failed to provide germane reasons to discount his mother's testimony. *See Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of the lay witnesses, [the ALJ] must give reasons that are germane to each witness.").

Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ must consider unless she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). An exception to the rule applies, however, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina v. Astrue*, 674 F.3d 1104, 1118-19; *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the claimant's wife's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

The symptoms testified to by plaintiff's mother are largely consistent with plaintiff's own testimony. As explained above, the court has determined the ALJ properly discounted that testimony with clear and convincing reasons supported by substantial evidence. Under Ninth Circuit precedent, those reasons apply with equal force to discount the lay witness statement from plaintiff's mother in this context. The ALJ therefore did not err.

## CONCLUSION

For the reasons stated above, the court AFFIRMS the Commissioner's final decision, and this action is DISMISSED.

DATED January 11, 2024.

_____
JEFF ARMISTEAD
United States Magistrate Judge

Page 14 – OPINION AND ORDER